UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| OCWEN LOAN SERVICING, LLC, as servicer for Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, solely in its capacity as Trustee for Provident Bank Home Equity Loan Asset-Backed Certificates, Series 2000-2, <br><br> Appellant, <br><br> v. <br><br> DENNIS E. THOMPSON and PAMELA A. THOMPSON, <br><br> Appellees. | Case No. 13-CV-487-JPS <br><br><br><br> ORDER |

      Appellant Ocwen Loan Servicing, LLC ("Ocwen"), as servicer for Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, solely in its capacity as Trustee for Provident Bank Home Equity Loan Asset-Backed Certificates, Series 2000-2 ("Wells Fargo"), appeals a final order of U.S. Bankruptcy Judge Susan V. Kelley, dated March 18, 2013 (Docket #1-9, 79-83) ("Final Order"), disallowing Wells Fargo's proof of claim in the bankruptcy proceeding of debtor-appellees, Dennis E. Thompson and Pamela A. Thompson (the "Thompsons").

1.    BACKGROUND

    1.1    Overview

      To recover money owed under the Thompsons' home financing adjustable rate note, dated April 14, 2000 (the "note"), a proof of claim was

filed in the bankruptcy court on Wells Fargo's behalf on May 24, 2005. (Docket #1-9, 79-80).[1]

On March 19, 2012, the Thompsons filed a pleading in their bankruptcy proceedings that the bankruptcy court construed as an objection to Wells Fargo's proof of claim. (*Id.* at 79). Ultimately, on March 14, 2013, the bankruptcy court held a final evidentiary hearing on the Thompsons' claim objection. (*Id.* at 80). The Final Order disallowing Wells Fargo's proof of claim for lack of standing was entered four days after that hearing. (*Id.* at 79).

1.2    Wells Fargo's Proof of Claim

At the final evidentiary hearing, the disputed proof of claim was found to consist of only: "the proof of claim form, a detailed accounting of the amount due, [the note], a Mortgage, a Prepayment Rider and an Adjustable Rider." (*Id.* at 80). Moreover, the bankruptcy court found that the note attached to the disputed proof of claim: (i) makes no mention of Wells Fargo; (ii) is not endorsed in blank; and (iii) "[t]here is no endorsement or allonge attached to the note." (*Id.*).[2]

That constellation of documentation, the Thompsons argued, provides no logical basis for Ocwen or Wells Fargo to prosecute the disputed proof of

---

[1] The proof of claim was amended four times, however "[t]he only copies of the underlying note and mortgage are attached to [the original claim]." (Docket #1-9, 79, n.1).

[2] The note itself is a curiosity: it is payable in the first instance to First National Funding Group, but contains an endorsement (dated contemporaneously with the note itself) stating "Pay to the Order of Provident Bank" which is signed by a representative of Central States Mortgage Co. (*Id.*, 80). However, nothing evidences a transfer or endorsement of the note from First National to Central States. (*Id.* at 80-81). Regardless, the Thompsons did not object to this particular discontinuity. (*Id.* at 81).

claim. (*Id.* at 121). By elucidating this gross deficiency, the Thompsons were deemed to have "overcome the presumptive validity of the [disputed proof of] claim under Bankruptcy Rule 3001(f), and the burden of proof shifted to Ocwen." (*Id.* at 80 and 122).

In response, Ocwen produced at the hearing "an August 22, 2002 allonge to the note signed by Provident that states 'Pay to the Order of Wells Fargo Bank Minnesota, NA.'" (*Id.* at 81 and 122). Having ascertained that no allonge formed part of the disputed proof of claim, the bankruptcy court solicited testimony or other evidence from Ocwen to "'connect the dots'" between the proffered allonge and the note. (*Id.* at 83 and 123).

Prior to the final evidentiary hearing, the bankruptcy court directed the parties to file a list of witnesses and copies of proposed exhibits. (*Id.* at 80). In response to that directive, Ocwen identified a representative for testimony, but none was present at the final evidentiary hearing. (*Id.*). Left in the lurch, counsel for Ocwen took the position that the allonge was self-authenticating commercial paper within the meaning of Federal Rule of Evidence 902(9). (*Id.* at 81, 122-123). Against the backdrop set forth above, the bankruptcy court rejected that argument. (Docket #1-9, 124). The Final Order adopted the same conclusion, reasoning that: (i) although Federal Rule of Evidence 902(9) requires no extrinsic evidence of authenticity in order to admit commercial paper, a signature on it, and related documents, it does so only "*to the extent allowed by general commercial law*"; (ii) general commercial law is understood to refer to the UCC; and (iii) Wis. Stat. § 403.308 (forming part of Wisconsin's adopted version of the UCC) affords only a rebuttable presumption of authenticity which the Thompsons overcame, thereby shifting the burden of proof back to Ocwen. (Docket #1-9, 81-82).

In a last-ditch effort to redeem the disputed proof of claim at the final evidentiary hearing, Ocwen attempted to establish standing by presenting certified copies of certain state court foreclosure proceedings. (*Id.* at 80-83).

With regard to that documentation, the bankruptcy court observed as follows:

> These pleadings show that in 2002, Provident, not Wells Fargo, filed a foreclosure suit and obtained a judgment. Three years later, shortly before the Debtors filed their Chapter 13 case, the attorneys for Provident filed a bare bones petition stating that Provident had been wrongly named as the plaintiff, and that Wells Fargo Bank Minnesota, National Association, solely in its capacity as Trustee, should be substituted. The same day the petition was filed, without any notice to the Debtors and lacking any documentary evidence that Wells Fargo was the proper plaintiff, the Circuit Court for Milwaukee County entered an order substituting Wells Fargo as the plaintiff. The appeal period had not expired from this order when the Debtors filed their Chapter 13 petition, and the foreclosure case has been stayed ever since.

(Docket #1-9, 82-83).

Against that factual backdrop, the bankruptcy court reasoned:

> While the Debtors may be estopped from challenging Provident's standing based on the certified copy of the foreclosure judgment, this Court will not grant Wells Fargo standing to prosecute the proof of claim based on an *ex parte* order that was still appealable when this bankruptcy was filed. If Wells Fargo truly had standing to act as plaintiff in the foreclosure case, presumably it could have attached evidence of that fact to the proof of claim. Instead, the copy of the note attached to the claim (and introduced at other points in these proceedings) contains no allonge, is not endorsed in blank, and is not payable to Wells Fargo.

(*Id.* at 83).

2. JURISDICTION

Ocwen submits that 28 U.S.C. § 158(a)(1) provides this Court jurisdiction over this appeal. Based on its own independent review of the record, the Court finds that the Final Order was indeed final within the meaning of Section 158(a)(1). (Docket #1-9, 83 and 116-117). Therefore, the Court is obliged to conclude that jurisdiction exists to entertain this appeal.

3. STANDARD OF REVIEW

> In the course of a district court's decision to affirm, modify or reverse an order of the bankruptcy court, "[f]indings of fact…shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Thus, a bankruptcy court's factual findings cannot be disturbed "simply because [the district court] is convinced it would have decided the case differently." *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Both questions of law and mixed questions of law and fact, however, are reviewed de novo. *See In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir. 1986).

*Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

4. ANALYSIS

Ocwen presents four issues on appeal. (Docket #-1-8). The Court will address each in turn.

4.1 *Rooker-Feldman*

Ocwen argues that the *Rooker-Feldman* doctrine divested the bankruptcy court of jurisdiction to enter the Final Order. (Docket # 1-8, 1).

> The *Rooker–Feldman* doctrine holds that the lower federal courts lack subject-matter jurisdiction over actions that seek review of state-court judgments; only the United States Supreme Court has authority to review state judgments. *See*

> *Skinner v. Switzer*, --- U.S. ----, 131 S.Ct. 1289, 1297, 179 L.Ed.2d 233 (2011); *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011). *Rooker–Feldman* is a "narrow doctrine, 'confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Kelley v. Med–1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (quoting *Lance v. Dennis*, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006)). Stated differently, *Rooker-Feldman* is only concerned with "situations in which the state court's decision is the source of the harm that the federal suit is designed to redress." *Simmons v. Gillepsie*, 712 F.3d 1041, 1043, No. 12-3381, 2013 W: 1110872, at *2 (7th Cir. Mar. 19, 2013).

*Dookeran v. County of Cook, Ill.*, 719 F.3d 570, 574-575 (7th Cir. 2013).

Here, the Thompsons' bankruptcy petition does not itself seek review of a state-court judgment, rather they (like other petitioners seeking bankruptcy protection) generally seek "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Here, Ocwen submits no evidence that the Thompsons' bankruptcy petition complains of any injury other than general misfortune.

To the extent Ocwen seeks to frame its claim within the Thompsons' bankruptcy proceeding as a "case" within the meaning of *Lance*, this argument fails as well because Wells Fargo (on whose behalf Ocwen acts) seeks to enforce a state court judgment, not collaterally attack it.

With the benefit of the foregoing analysis, the Court is obliged to conclude that the *Rooker-Feldman* doctrine did not divest the bankruptcy court of jurisdiction to address Wells Fargo's proof of claim within the Thompsons' bankruptcy proceeding.

4.2 Judicial Estoppel

Ocwen contends that, regardless of *Rooker-Feldman*, the bankruptcy court erred in not applying the doctrine of judicial estoppel to the Thompson's objection to Wells Fargo's proof of claim given that the Milwaukee County Circuit Court entered an order in 2005 substituting Wells Fargo as the plaintiff in the foreclosure proceeding that resulted in a 2002 judgment in favor of Provident Bank (and against the Thompsons).

> In *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), the Supreme Court observed that the standard for invoking judicial estoppel is "not reducible to any general formulation of principle," but recognized three factors that "typically inform the decision whether to apply the doctrine in a particular case." Id. at 750, 121 S.Ct. 1808 (internal quotation omitted). Those factors are first, that "a party's later position must be clearly inconsistent with its earlier position;" second, that "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and third, that "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51, 121 S.Ct. 1808 (internal quotations omitted).

*In re Knight-Celotex, LLC*, 695 F.3d 714, 721-722 (7th Cir. 2012).

Here, the bankruptcy court found as a matter of fact that the 2005 substitution order was entered by the Milwaukee County Circuit Court "[t]he same day [Provident's] petition was filed" notwithstanding the absence of "any notice to the Debtors" and a dearth of "documentary evidence that Wells Fargo was the proper plaintiff" in the foreclosure proceeding. (Docket #1-9, 82-83). Applying the three-factor test enumerated in *New Hampshire* to those facts, it is plainly apparent that the doctrine of

judicial estoppel is inapplicable to the Thompsons' objection to Wells Fargo's proof of claim because: (i) the 2005 substitution order was entered *ex parte* (*i.e.*, the Thompsons took no "earlier position"); (ii) there is no evidence that the Thompsons received notice of that order before they filed for bankruptcy on May 31st, 2005 (approximately one month after the 2005 substitution order was entered); and (iii) moreover, the bankruptcy petition had the effect of staying the foreclosure proceedings. (Docket #1-9, 127-128).

In conclusion, for the reasons set forth above, the Court finds no error in the bankruptcy court's decision to "not grant Wells Fargo standing to prosecute the proof of claim based on an *ex parte* order that was still appealable when this bankruptcy was filed." (Docket #1-9, 83).

4.3 Self-Authentication Under FRE 902(9)

At the final evidentiary hearing, Ocwen sought to redeem Wells Fargo's disputed proof of claim (which lacked any endorsement in favor of Wells Fargo or in blank) by offering into evidence "an August 22, 2002 allonge to the note signed by Provident that states 'Pay to the Order of Wells Fargo Bank Minnesota, NA.'" (*Id.* at 81 and 122).

Having ascertained that no allonge formed part of the disputed proof of claim, the bankruptcy court solicited testimony or other evidence from Ocwen to "'connect the dots'" or, in other words, to reconcile the discrepancy between the proof of claim note (*sans* allonge) and the proffered note (coupled with the disputed allonge). (Docket #1-9, 80-83 and 124). In response, Ocwen produced no testimony and relied on the disputed allonge itself. (*Id.* at 80 and 124). The disputed allonge, Ocwen argued, self-authenticates under Federal Rule of Evidence ("FRE") 902(9) (providing that no extrinsic evidence of authenticity is required to admit "[c]ommercial

paper, a signature on it, and related documents, to the extent allowed by general commercial law.").

The Final Order rejects that argument reasoning that: (i) although FRE 902(9) requires no extrinsic evidence of authenticity in order to admit commercial paper, a signature on it, and related documents, it does so only "*to the extent allowed by general commercial law*" ("Step One"); (ii) general commercial law is understood to refer to the UCC[3] ("Step Two"); and (iii) Wis. Stat. § 403.308 (forming part of Wisconsin's adopted version of the UCC) affords only a rebuttable presumption of authenticity which the Thompsons overcame, thereby shifting the burden of proof back to Ocwen ("Step Three"). (Docket #1-9, 81-82); FRE 902(9) (Westlaw 2013) (emphasis added).

In this appeal, Ocwen argues that self-authentication is axiomatic under FRE 902(9), ignoring completely Step Three of the bankruptcy court's analysis (which begins, but does not end, at FRE 902(9)). (Docket #5, 17-18); (Docket #8, 7-8).

Although this Court finds no error in Steps One and Two of the bankruptcy court's reasoning, the Court is obliged to find that the citation in Step Three (Wis. Stat. § 403.308) is plainly inapposite because that section pertains to disputes about *the validity of a signature*, whereas the Thompsons based their objection on *the absence of an endorsement* from Provident to Wells Fargo.

Notwithstanding the bankruptcy court's error in Step Three of its analysis, this Court finds that the bankruptcy court's ultimate conclusion— "the disputed allonge on its own cannot confer standing on Wells

---

[3] 31 Fed. Prac. & Proc. Evid. § 7143(9) (1st ed.) (Westlaw).

Fargo"—can be sustained without reaching beyond Step One: FRE 902(9). FRE 902 embodies a pragmatic recognition that the odds of certain documentation (including commercial paper) being doctored (or otherwise inauthentic) is sufficiently low that the authenticity of such documentation generally need not be proven by extrinsic evidence.

But here, faced with two materially different versions of the same negotiable instrument (one sans allonge and the other purportedly modified by an allonge), this Court is obliged to concur that application of FRE 902(9) to the latter would be overly mechanistic.

However, even if each version of the note self-authenticates under FRE 902(9), without testimony or other evidence from Ocwen to "'connect the dots'" between the disputed allonge and the note, the evidentiary record contained only equally-probable "authentic" versions of the note countervailing one another. Against that evidentiary backdrop, the bankruptcy court committed no error in finding insufficient evidence to confer standing on Ocwen to prosecute the disputed proof of claim.

4.4     Disallowance of Ocwen's Proof of Claim

Ocwen's fourth "ground" of appeal—a generalized grievance that "the Bankruptcy Court erred in disallowing Ocwen's proofs of claim" (Docket #1-8, 1)—was not expounded upon until briefing and so effectively served as a placeholder in Appellant's "Statement of the Issues on Appeal" docketed with this Court. Regardless, because the arguments Ocwen makes under this heading are meritless, the Court will address each briefly.

4.4.1     Nonholder in Possession

Ocwen contends that Wells Fargo had standing to prosecute the disputed proof of claim by virtue of being "a nonholder in possession of the

Page 10 of 13

Case 2:13-cv-00487-JPS   Filed 01/07/14   Page 10 of 13   Document 12

[note] who has the rights of a holder" (within the meaning of Wis. Stat. § 403.301). (Docket #5, 18-21). To support this bald legal conclusion, Ocwen reasons (buried in a footnote, no less) that "Wells Fargo is a nonholder in possession of the note with the rights of a holder because there is a missing endorsement on the original note" from First National to Central States. (Docket #5, 21, n.2); *see also*, footnote 2, *supra*. Ocwen's perplexing proposition is (perhaps unsurprisingly) not supported by a single citation to Wisconsin law. Moreover, this Court finds nothing in the record to suggest that this argument was put before the bankruptcy court at the final evidentiary hearing.

Against that backdrop, this Court finds no basis to endorse Ocwen's unsubstantiated (and ostensibly belated) argument regarding a nonholder in possession.

### 4.4.2 Claim Preclusion

This Court must next turn to Wisconsin preclusion law because "'Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (citations omitted).

> In Wisconsin, the doctrine of claim preclusion has three elements: "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits."

*Kruckenberg v. Harvey*, 279 Wis.2d 520, 531 (Wis. Sup. Ct.).

This Court finds no error in the bankruptcy court's refusal to apply the doctrine of claim preclusion to the Thompsons' objection to Wells Fargo's

proof of claim because Ocwen fails on the first element of Wisconsin's test. The first element was not proven because: (a) the Thompsons' counterparty differed in the foreclosure action on the merits (Provident[4]) from the bankruptcy proceeding (Wells Fargo); and (b) the disputed allonge does not establish privity between Provident and Wells Fargo. *See* Section 4.3 *supra*.[5]

5. Conclusion

With the benefit of the foregoing analysis, this Court is obliged to affirm the Final Order.[6]

Accordingly,

IT IS ORDERED that the final order of U.S. Bankruptcy Judge Susan V. Kelley, dated March 18, 2013 (Docket #1-9, 79-83), disallowing Wells Fargo's proof of claim in the bankruptcy proceeding of debtor-appellees, Dennis E. Thompson and Pamela A. Thompson, be and the same is hereby AFFIRMED; and

---

[4] As noted in Section 4.2, *supra*: (i) the 2005 order substituting Wells Fargo as the plaintiff in Provident's foreclosure action was entered *ex parte*; (ii) there is no evidence that the Thompsons received notice of that order before they filed for bankruptcy on May 31, 2005 (approximately one month after the 2005 substitution order was entered); and (iii) moreover, the bankruptcy petition had the effect of staying the foreclosure proceedings. (Docket #1-9, 127-128).

[5] Moreover, it appears that the sum total of Ocwen's claim preclusion argument before the bankruptcy court in the final evidentiary hearing was merely an offhanded bald legal conclusion that counsel did not expressly attempt to substantiate with any evidence or legal authority whatsoever. *See* (Docket #1-9, 126).

[6] The Thompsons' briefing in this appeal (Docket #s 7 and 9) grossly fails to conform to the strictures set forth in Fed. R. Bankr. P. 8010(a)(2). However, because this appeal is resolved without the benefit of that briefing, Ocwen's motions to strike (Docket #s 8 and 10) will be denied as moot.

IT IS FURTHER ORDERED that Appellant's motions to strike Appellees' briefing (Docket #s 8 and 10) be and the same are hereby DENIED as moot.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of January, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge